UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 PROCEEDING |
| | ) | |
| NICHOLAS AND KATHRYN TANGLIS, | ) | |
| Debtors. | ) | |
| | ) | CASE NO. 05 B 05086 |
| DAVID LEIBOWITZ, | ) | |
| CHAPTER 7 TRUSTEE | ) | |
| | ) | ADVERSARY NO. 05 A 01320 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NICHOLAS AND KATHRYN TANGLIS, | ) | |
| Defendants. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Adversary Proceeding relates to the Chapter 7 bankruptcy case of Nicholas and

Kathryn Tanglis ("Debtors" or "Defendants"). David P. Leibowitz, Chapter 7 Trustee (the

"Trustee") filed this Adversary Complaint objecting to Debtors discharge under 11 U.S.C. § 727.

The Trustee contends that Debtors failed to maintain and produce necessary documents and

records regarding their unsecured debts totaling $1,050,000. Nicholas Tanglis fails to offer an

explanation for his failure to maintain and produce necessary documents and records as to

$950,000 of his debt. Kathryn Tanglis was not involved in her husband's dealings and contends

that she is an innocent spouse who relied on her husband for record keeping and thus her reliance

is an acceptable excuse for her failure to keep such records. But she scheduled $108,000 in her

own credit card debts without keeping or retrieving records concerning those debts.

Following trial the Court now makes and enters the following Findings of Fact and
Conclusions of Law, pursuant to which judgment will separately enter denying each Debtor a
bankruptcy discharge under 11 U.S.C. §§ 727(a)(3).

## FINDINGS OF FACT

1.      The Defendants filed their voluntary petition for relief under Chapter 7 of the
Bankruptcy Code on February 15, 2005.

2.      Defendants' Schedule F lists $1,541,366.00 in unsecured nonpriority claims.

3.      Nicholas Tanglis is 48 years of age and resides at 516 Bedford, Des Plaines,
Illinois.

4.      Kathryn Tangis is 47 years old and also resides at 516 Bedford, Des Plaines,
Illinois.

5.      Nicholas Tanglis was employed as Vice-President of Plaza Bank from 1986
until 1997.

6.      Between 1997 and 2002, Nicholas Tanglis was involved in organizing the
Citizen's Bank and Trust Company.

7.      Nicholas Tanglis is currently self employed as a business consultant.

8.      During the last 5 years Kathryn Tanglis has been a homemaker and has not been
formally employed.

9.      Prior to 5 years ago, Kathryn Tanglis worked part time as a waitress.

10.     Nicholas Tanglis keeps the records in the Tanglis household.  Nicholas Tanglis
receives and checks all bank statements and cancelled checks on all checking accounts of the
Tanglis' household.

2

11.    Nicholas Tanglis collects all necessary documents for the preparation of federal and state tax returns and is the individual in the household who meets with the accountant with respect to the preparation of the returns.

12.    Kathryn Tanglis writes checks with respect to credit card bills in her name or pays those bills on-line.

13.    Deposits of funds into any of the Tanglis' checking accounts are made by either Nicholas Tanglis or Kathryn Tanglis from funds provided by Nicholas Tanglis.

14.    Nicholas Tanglis was sued by the Federal Deposit Insurance Corporation (FDIC) as a result of engaging in certain banking activities and, as a result, a civil money penalty of $25,000 was imposed against him.

15.    Kathryn Tanglis was not involved in any banking activities which were the subject matter of the lawsuit filed against her husband; she has no record or personal knowledge of these matters.

16.    Over the course of many years, one George Christopher provided Nicholas Tanglis with personal loans amounting to $500,000. These loans were used by Nicholas Tanglis to make investments which failed. These loans and investments were made without documentation or records. Kathryn Tanglis was not involved in any loans made by George Christopher to Nicholas Tanglis. Kathryn Tanglis has no personal knowledge of these loans or the use of the monies by her husband, Nicholas Tanglis.

17.    One George Michael loaned Nicholas Tanglis $40,000 in personal loans during the time period that Nicholas Tanglis was assisting George Michael in organizing the Citizens Bank & Trust Company. These loans were made without any documentation. Kathryn Tanglis

3

was not involved in any of the loans made by George Michael to Nicholas Tanglis. Kathryn

Tanglis has no personal knowledge of these loans or the use of the monies by her husband,

Nicholas Tanglis.

18.    One George Nediyakalayil made a $200,000 loan to Nicholas Tanglis to pay-off

an outstanding indebtedness of Nicholas Tanglis. The loan was made without any

documentation. Kathryn Tanglis was not involved in the loan made by George Nediyakalayil to

Nicholas Tanglis. Kathryn Tanglis has no personal knowledge of these loans or the use of the

monies by her husband, Nicholas Tanglis.

19.    One John Moro made a loan to Nicholas Tanglis for $25,000. The monies were

used by Nicholas Tanglis for personal expenses. The loan was made without documentation.

Kathryn Tanglis was not involved in the loan made by John Moro to Nicholas Tanglis.

20.    One John Sellis made a loan of $25,000 to Nicholas Tanglis. The monies were

used by Nicholas Tanglis to pay legal fees in connection with the suit filed by the FDIC against

him. The loan was made without documentation. Kathryn Tanglis was not involved in the loan

made by John Sellis to Nicholas Tanglis. Kathryn Tanglis has no personal knowledge of this

loan or the use of the monies by her husband, Nicholas Tanglis.

21.    JSL Properties made a series of loans in the amount of $100,000 to Nicholas

Tanglis. These monies were used by Nicholas Tanglis to fund a failing restaurant business and to

pay for legal fees. The loans were made without documentation. Kathryn Tanglis was not

involved in the loans made by JSL Properties to Nicholas Tanglis. Kathryn Tanglis has no

personal knowledge of these loans or the use of the monies by her husband, Nicholas Tanglis.

4

22.     One Nick Gomopoulos made a $30,000 loan to Nicholas Tanglis. These monies were used by Nicholas Tanglis for personal expenses. The loan was made without documentation. Kathryn Tanglis was not involved in the loan made by Nick Gomopoulos to Nicholas Tanglis. Kathryn Tanglis has no personal knowledge of the loan or the use of the monies by her husband, Nicholas Tanglis.

23.     One Peter Giannikoulis made a $30,000 loan to Nicholas Tanglis. The monies were used by Nicholas Tanglis in a failing restaurant business. The loan was made without documentation. Kathryn Tanglis was not involved in the loan made by Peter Giannikoulis to Nicholas Tanglis. Kathryn Tanglis has no personal knowledge of the loan or the use of the monies by her husband, Nicholas Tanglis.

24.     Messrs. Stephen and Joel Koppell made a $185,000 loan to Nicholas Tanglis, the principal and interest due on the loan is currently $307,000. Nicholas Tanglis used the monies from this loan to pay off prior loans and $35,000 was loaned by Nicholas Tanglis to another individual. The loan was made without documentation. Kathryn Tanglis was not involved in the loan made by Stephen and Joel Koppell. Kathryn Tanglis has no personal knowledge of the loan or the use of the monies by her husband, Nicholas Tanglis.

25.     A judgment in favor of Sam & Maria Prassino was entered against Defendants based on a junior mortgage on the Debtor's marital residence. The monies loaned by the secured creditor were utilized by Nicholas Tanglis for investment purposes. Kathryn Tanglis has no personal knowledge of the use of these monies by her husband, Nicholas Tanglis.

26.     Kathryn Tanglis has scheduled $108,810 in unsecured credit card debt on Schedule F. Kathryn Tanglis was unable to document items purchased with this credit card debt.

5

27.    During trial, Kathryn Tanglis did not enter a single credit card statement into evidence.

28.    The Trustee requested documentation regarding debts of Mr. Tanglis in excess of $950,000 and other unsecured indebtedness of Mrs. Tanglis in excess of $108,000. The Trustee received the following documents from Debtors:

    a.    Residential Loan Application

    b.    Information tendered by Debtors regarding Jennifer Farfaras v. Citizens Bank and Trust, et al, 01 C 8720

    c.    Statement from David A. Noyes & Company

    d.    American Express Recent Payment Statement

    e.    Unknown Signature Card

    f.    Plaza Bank information re Vault No. 646, 1350, 591

    g.    Mount Prospect National Bank various statements

    h.    Statement of repair schedule for 1995 Mercedes Benz S500 Repair Schedule

    i.    Debtors Federal 1040 Tax Returns and attached documentation for 1999, 2000, 2001 and 2002

    j.    2004 Citizens Financial K-1 statement to Debtor, Nicholas Tanglis

    k.    Promissory Note dated November 17, 2000

    l.    Purchase/Sale Agreement dated April 27, 2004

    m.    Agreement for Continuance of Personal Liability, 03 CH 09906

    n.    Covest Banc statements Account number 054-501735-5

    o.    First Midwest Bank statements Account Number 0545017355

p.    Fifth Third Bank statements Account Number 7232458625

q.    Advocates Professional Services, Inc., letter dated June 15, 2004

r.    Durkin & Roberts invoice dated February 26, 2004.

29.    Neither Defendant has filed federal tax returns for the years 2003 and 2004 (tax years for which returns were due prior to their bankruptcy filing).

30.    Statements of fact contained in the Conclusions of Law section shall constitute additional Findings of Fact.

## CONCLUSIONS OF LAW

### Jurisdiction

Jurisdiction lies under 28 U.S.C. § 1334 and under District Court's Internal Operating Procedure 15(a).  Determination on an objection to discharge is a core proceeding under 28 U.S.C. § 157 (b)(2)(J).  Venue is proper under 28 U.S.C. § 1409.

### Discharge Standards

The Trustee has the burden of proof and must prove every element of his objections to discharge by a preponderance of evidence.  In re Scott, 172 F.3d 959, 966-67 (7th Cir. 1999); In re Martin, 141 B.R. 986, 992 (Bankr. N.D. Ill. 1992).  A Chapter 7 discharge "recognizes the Congressional intent of providing the bankrupt with a 'fresh start,'" [and] 11 U.S.C. § 727(a) of the Bankruptcy Code must be construed strictly against the objecting [party] and liberally in favor of the debtor." In re Costello, 299 B.R. 882, 894 (Bankr. N.D. Ill. 2003). However, violation by the debtor of any of the provisions of 11 U.S.C. § 727 completely bars a debtor's discharge.  Id.

**11 U.S.C. § 727(a)(3)**

Section 727(a)(3) provides that a debtor shall be granted a discharge unless the debtor

fails to keep or preserve books and records from which the debtor's financial condition may be

ascertained. 11 U.S.C. § 727(a)(3). The purpose of § 727(a)(3) is to make "a privilege of

discharge dependent on a true presentation of the debtor's financial affairs.'" In re Self, 325 B.R.

224, 240 (Bankr. N.D. Ill. 2005) (citing In re Scott, 172 F.3d 959, 969 (7th Cir. 1999)).

The language of § 727(a)(3) "places an affirmative duty on the debtor to create books and

records accurately documenting his financial affairs." In re Self, 325 B.R. at 240; In re Hansen,

325 B.R. 746, 761 (Bankr. N.D. Ill. 2005) (noting debtors' "obligation to maintain, preserve, and

produce records of their financial affairs"); In re Costello, 299 B.R. at 897 (noting "affirmative

duty to create books and records" imposed on debtors by § 727(a)(3)). In fact, "[s]ubstantially

accurate and complete records of a debtor's financial affairs is a prerequisite to discharge in

bankruptcy." In re Martin, 141 B.R. at 995.

The party alleging that a debtor has breached this affirmative duty "has the initial burden

of proving that the books and records are inadequate," and thereafter "the burden of production

shifts to the debtor to justify the lack of adequate records under the particular circumstances." In

re Costello, 299 B.R. at 897; In re Self, 325 B.R. at 241.

Section 727(a)(3) "insures that creditors receive adequate information so that they can

'ascertain the debtor's financial condition and track his financial dealings with substantial

completeness and accuracy for a reasonable period past to present.'" In re Costello, 299 B.R. at

897 (citing In re Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996) (internal citations omitted)). "The

8

determination of what constitutes a reasonable period prior to filing must be measured on a case-by-case basis, taking into account all of the circumstances of the case." In re Self, 325 B.R. at 241. Whether a debtor's books and records are complete and accurate is to be determined on a case-by-case basis, considering the size and complexity of the debtor's financial situation, as well as "the sophistication of the debtor, his educational background, his business experience and acumen, and his personal financial structure." In re Self, 325 B.R. at 241; In re Costello, 299 B.R. at 897.

Section 727(a)(3) "does not merely require that the debtor not lose any records; it mandates a denial of discharge for the 'failure to act,' unless such failure to act is justifiable." In re Self, 325 B.R. at 241. Mere testimony from the debtors regarding their version of their financial transactions is insufficient to satisfy the duty imposed by § 727(a)(3), and neither the Trustee nor the court is required to "reconstruct a debtor's financial situation or take a debtor's word for his financial dealings." In re Hansen, 325 B.R. at 761; In re Carlson, 231 B.R. 640, 655 (Bankr. N.D. Ill. 1999) (holding that "[c]reditors and the Trustee are not required to accept Debtor's oral recitations or recollections of his transactions; rather, to qualify for a discharge in bankruptcy, a debtor is required to keep and produce written documentation of all such transactions.").

The Debtors jointly wish to discharge over $1,541,366.00 of unsecured debt while providing wholly inadequate documentation regarding their books and records. The Debtors have failed to produce books and records from which their financial condition may be ascertained. In addition, neither of the Debtors have filed any tax returns since 2002 making it impossible to determine even the most elemental aspects of their financial condition.     Section

9

727(a)(3) puts an affirmative duty on the Debtors to produce books and records that accurately document their financial affairs. They should not be granted a discharge because, in this case, their failure to do so was not justifiable. "[C]ourts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs." In re Juzwiak, 89 F.3d at 428 (citations omitted).

The Debtors have not offered an explanation which justifies their lack of adequate books and records under the particular circumstances of this case. While both debtors allegedly do not possess adequate books are records, they are not excused from making a good-faith effort to reconstruct those records, which they simply have not done. Accordingly, pursuant to 11 U.S.C. § 727(a)(3) the Trustee has proven by a preponderance of the evidence that the Debtors have each failed to keep or preserve books and records from which the their financial condition may be ascertained, and the Debtors' discharges are therefore denied on that basis.

### Mr. Tanglis' Failure to Preserve Books and Records From Which His Financial Condition May Be Ascertained

Mr. Tanglis is a college educated sophisticated businessman. He has worked at various banks holding positions such as bank teller, accounting clerk, residential loan officer, and Vice President. Mr. Tanglis was also responsible for organizing a bank. Thus, he is quite familiar with loan transactions and the associated paperwork.

Nevertheless, Mr. Tanglis wishes to discharge $950,000 of unsecured debt for personal loans while failing to provide any records regarding any of the loans. Mr. Tanglis testified that he borrowed funds and invested them into various avenues, such as business and real estate ventures. Mr. Tanglis testified that he did not keep any records to demonstrate how any of the

10

money was spent; he claims that many of the loans were from relatives and the agreements surrounding the terms of the loans were verbal. He testified that he kept track of all of the records and investments by memory. Mr. Tanglis claims that some of the loans were deposited into his bank accounts, but fails to provide bank records reflecting such deposits.

It is impossible to ascertain Mr. Tanglis' financial condition absent records showing the date the loans were made, where the funds were deposited, the source of the funds, and what investments were made with the funds. There is absolutely no way to trace any of the $950,000 in personal loans, so as to find out what was done with the money. Accordingly, pursuant to 11 U.S.C. § 727(a)(3) the Trustee has proven by a preponderance of evidence that Mr. Tanglis has failed to keep or preserve books and records from which his financial condition may be ascertained. His discharge will be denied on that basis.

## Mrs. Tanglis' Failure to Preserve Books and Records From Which Her Financial Condition May Be Ascertained

The parties stipulated during trial that Mrs. Tanglis has no knowledge of Mr. Tanglis' debts. Nevertheless, Mrs. Tanglis wishes to discharge over $100,000 in various credit card debt without providing any credit card statements. Mrs. Tanglis is not formally employed, but is college educated. She also testified that she knew it was a good idea to keep records for at least a year. However, despite requests from the Trustee, she failed to produce any records regarding her credit card debt.

During trial, Mrs. Tanglis testified that she was unable to identify any items purchased on any credit card account listed in Schedule F except to state that all purchases were confined to

11

purchases of consumables for everyday expenses such as food and utilities. However, without
providing any credit card statements, it is impossible to corroborate this testimony.

The Trustee filed the instant Adversary proceeding on May 13, 2005. Trial on this matter
was held on March 14, 2006. Therefore, Mrs. Tanglis had ten months to obtain copies of credit
card statements regarding her unsecured credit card debt of over $100,000. However, she failed
to produce even a single credit card statement. She did tender almost five years of bank
statements, but they do not enable the Trustee to determine what was purchased with those credit
cards or whether any credit card installment payments were made during the 90 days prior to
filing for bankruptcy which might indicate the possibility of an avoidable transfer.

Mrs. Tanglis testified that she has been using computers for approximately ten years. She
testified that she knows how to receive emails and make electronic payments online, but is
unaware how to save files to her computer. Even if Mrs. Tanglis is unaware of how to save files
on her computer and thus did not have any records to give to the Trustee, she still had an
affirmative duty to produce credit card statements. See In re Self, 325 B.R. 224, 240 (Bankr.
N.D. Ill. 2005) ("The language of § 727(a)(3) 'places an affirmative duty on the debtor to create
books and records accurately documenting his financial affairs.'"). There was no evidence
introduced by Mrs. Tanglis with copies of credit card statements retrieved from the credit card
companies. While Mrs. Tanglis may not possess her original credit card statements, she still had
a duty and ability to retrieve them.

Mrs. Tanglis asserts that she is an innocent spouse who relied on her husband to keep
books and records and thus has an acceptable excuse for her failure to produce books and
records. She relies on Goodman v. Schwartz (In re Goodman) for authority. 227 B.R. 626

12

(Bankr. E.D. Pa. 1998). In Goodman, Chief Judge Scholl, citing In re Goldstein, 123 B.R. 514, 522 (Bankr. E.D. Pa. 1991) noted, "Acceptable excuses for failure to maintain sufficient business records are lack of sophistication with regard to business matters, the debtor's subordinate role in the business operation, and that the debtor is an innocent spouse who relied on the other spouse for record keeping." In re Goodman, 227 B.R. at 631. In Goldstein, one discovers that the original support for the proposition that a spouse may be innocent when he or she relies on the other spouse for maintaining the books and records is found In re MacPherson, 101 B.R. 324 (Bankr. M.D. Fla. 1989). In MacPherson, one of the debtors was a homemaker who relied on her spouse for keeping the financial records. It was noted, "[T]here is nothing in this record which would warrant the finding that she ... engaged in extensive commercial transactions which would require her to maintain books and records." In re MacPherson, 101 B.R. at 326. Because that spouse did not participate in the dissipation of assets, she had no reason to keep books and records. Likewise, Mrs. Tanglis had no responsibility for records of her husband's loans, debts, and dealings described above.

But she actively participated on her own account in accumulating over $108,000 of unsecured credit card debt. Mrs. Tanglis was personally responsible for incurring substantial debt and accordingly was required to produce books and records to document that debt. Because she failed to retrieve such records from the credit card companies and therefore did not produce any books and records, her financial affairs could not be ascertained or traced. Pursuant to 11 U.S.C. § 727(a)(3) the Trustee has therefore proven by a preponderance that her discharge must be denied on that basis.

13

## CONCLUSION

Accordingly, under 11 U.S.C. § 727(a)(3) Debtors and each of them have failed to

explain lack of adequate records.  Their discharges must therefore each be denied. Judgment will

separately enter denying both Debtors a bankruptcy discharge.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 12 day of April 2006.

## CERTIFICATE OF SERVICE

I, Dorothy Clay certify that on April _12_, 2006, I caused to be mailed by United States

first class mail copies of the foregoing FINDINGS OF FACT AND CONCLUSIONS OF LAW

to the following:

David P. Leibowitz, Esq.
Chaya D. Williams, Esq.
Leibowitz Law Center
420 West Clayton Street
Waukegan, IL 60085
Chapter 7 Trustee

David R. Herzog, Esq.
77 West Washington Street
Suite 1717
Chicago, IL 60602
Counsel for Debtor/Defendant


_Dorothy Clay_
Secretary/Deputy Clerk